UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JET MIDWEST INTERNATIONAL CO., LTD., | ) |
| Plaintiff / Judgment-Creditor, | ) ) ) |
| vs. | ) ) ) |
| Judgment-Debtor JET MIDWEST GROUP, LLC, PAUL KRAUS, KAREN KRAUS, F. PAUL OHADI in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999 and in his individual capacity, the F. PAUL OHADI TRUST DATED DECEMBER 15, 1999, KENNETH M. WOOLLEY, JET MIDWEST, INC., KMW BUSINESS JETS, LLC, and ALTA AIRLINES HOLDINGS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) 5:2018-cv-06019-FJG |
| Defendants. | ) ) |
| ----------------------------------------------------------------- | ) ) |

**PLAINTIFF/JUDGMENT-CREDITOR JET MIDWEST INTERNATIONAL CO., LTD.'S SUGGESTIONS IN RESPONSE TO OHADI/WOOLLEY DEFENDANTS' MOTION TO <u>ALTER OR AMEND JUDGMENT AND ORDER</u>**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
|  | A. The Judgment Does Not Need to "Discuss" Mo. Stat. Ann. § 428.044.2 | 2 |
|  | B. The Collection of Damages Should Not Be Stayed During the Receivership | 3 |
|  | C. The Judgment Does Not Need to Identify the Receiver by Name | 7 |
|  | D. A Fee Award Does Not Need to Be Quantified for a Judgment to Be Final | 7 |
|  | E. Well in Advance of the First Trial, the Parties Agreed that a Final Judgment Should Be Entered Without Delay after the First Trial | 8 |
|  |     1. This Issue Was Resolved in January 2019 and There Is No Reason to Relitigate It Now | 8 |
|  |     2. Even if This Issue Had Not Been Addressed Well Before the First Trial, It Would Still be Appropriate to Enter a Rule 54(b) Certification | 11 |
|  | F. Defendants' Critiques of the May 26 Order Can Be Resolved on Appeal | 13 |
| III. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*Budinich v. Becton Dickinson & Co.*,
   486 U.S. 196 (1988)...................................................................................................7

*Maristuen v. Nat'l States Ins. Co.*,
   57 F.3d 673 (8th Cir. 1995) ........................................................................................7

*Obin v. Int'l Ass'n of Machinists & Aerospace Workers*,
   651 F.2d 574 (8th Cir. 1981) .....................................................................................7

Statutes and Codes

United States Code
   Title 28, section 1292(a)(2).......................................................................................7

Missouri Revised Statutes Annotated
   Section 428.044.2.......................................................................................................3

Rules and Regulations

Federal Rules of Civil Procedure
   Rule 54(b) ............................................................................................................8, 11

Other Authorities

10 Moore's Federal Practice – Civil Section 54.24 .........................................................8

## I.    INTRODUCTION

Plaintiff / Judgment Creditor Jet Midwest International Co., Ltd. ("JM International") respectfully responds to the Ohadi / Woolley Defendants' Motion to Alter or Amend Judgment and Order (Docket No. 644) (the "Motion").  One of the requests made in the Ohadi / Woolley Defendants' Suggestions in Support (Docket No. 645) (the "Suggestions") is uncontroversial: specifically, the "request that the Court issue an amended Judgment clarifying the amount of monetary damages being awarded." *See* Suggestions at 3-4.  JM International agrees there should be an amended judgment specifying the amount of damages.  On June 24, 2020, JM International moved for an amended judgment specifying the amount of damages.  *See* Docket Nos. 650, 651.

The Ohadi / Woolley Defendants do not quantify what they believe the damages amount should be.  In its June 24, 2020 motion, JM International quantifies what the damages amount should be and also attaches a Proposed Amended Judgment to that effect.  *See* Docket No 651-2.

As explained in JM International's motion, this is a straightforward issue.  Specifically:

- The Ohadi / Woolley Defendants received fraudulent transfers with an aggregate value of $41,054,949.67.  *See* Docket No. 651, Table 1 (citing May 26 Order FF[1] ¶¶ 184, 189, 350, 353, 367, 374 and CL ¶¶ 284, 315, 316).

- However, the purpose of this fraudulent transfer case is only to satisfy the amounts owed by JMG per the judgment entered on October 26, 2017 (the "Term Loan Judgment") in W.D.Mo. Case No. 17-cv-06005 (the "Term Loan Action").

- As entered on October 26, 2017, the Term Loan Judgment was in the amount of: (i) $6,500,000; plus, (ii) $75,833.37 in pre-judgment interest, plus (iii) post-judgment interest in the amount of 14% per annum.  *See* Term Loan Judgment.

- From October 26, 2017 through May 31, 2019, the Term Loan Judgment accrued

---

[1] As used herein, "FF" refers to Findings of Fact and "CL" refers to Conclusions of Law.

post-judgment interest of $2,090,326.37, for a total Term Loan Judgment amount of $8,666,159.74 as of May 31, 2019. *See* May 26 Order, FF ¶ 242.

- Therefore, the amount of monetary damages that should be awarded in this case is: (i) $6,500,000 (the original principal amount); plus, (ii) $75,833.37 (pre-judgment interest); plus (iii) $2,090,326.37 (post-judgment interest through May 31, 2019); plus, (iv) post-judgment interest of 14% per annum from June 1, 2019 until the judgment is satisfied; plus, (v) such additional amounts as may be awarded to JM International in attorney fees or costs in the Term Loan Action or this case.

The damages award should be deemed satisfied if and when it is (i) paid in full by the Receiver on behalf of the receivership estate or (ii) paid by or collected from the Ohadi / Woolley Defendants.

The other positions taken in the Motion are without merit, as discussed in detail below.

## II. ARGUMENT

As noted above, JM International agrees with the Ohadi / Woolley Defendants that this Court should amend its judgment to specify the amount of monetary damages. The appropriate amount of damages to be awarded pursuant to the May 26 Order is uncomplicated: it is the Term Loan Judgment damages formula previously assessed against JMG in the Term Loan Action, together with such fees and costs as may be awarded in this proceeding or the Term Loan Action. The specific computation is described above and in JM International's June 24, 2020 motion.

The Ohadi / Woolley Defendants' other arguments are without merit, as discussed below.

### A. The Judgment Does Not Need to "Discuss" Mo. Stat. Ann. § 428.044.2

The Ohadi / Woolley Defendants complain that the Court's judgment does not sufficiently "discuss the limitation on monetary judgments under Mo. Stat. Ann. § 428.044.2, which provides that a 'creditor may recover for the value of the asset transferred, as adjusted under subsection 3 of this section or the amount necessary to satisfy the creditor's claim, whichever is less.'" *See*

2

Suggestions at 4. This argument is odd because, in their Proposed Findings of Fact and Conclusions of Law, filed on January 21, 2020, the Ohadi / Woolley Defendants did not "discuss" or otherwise cite this statutory provision. *See* Docket No. 623. The Ohadi / Woolley Defendants have no basis to complain that the Court did not discuss a matter they themselves did not raise.

It also is unnecessary to discuss this statutory provision, as it already is being properly applied. JM International is not seeking to claw back fraudulent transfers in excess of the value of JM International's claim. JM International's claim is the Term Loan Judgment that JMG refuses to pay (plus such fees or costs as this Court may find it appropriate to award). In this fraudulent transfer case, JM International is seeking damages in the precise amount of that claim – nothing more, nothing less – as described in detail above and in JM International's June 24, 2020 motion. This point has been well understood by all parties since the day this case was filed. Under Mo. Stat. Ann. § 428.044.2, it is appropriate to seek this amount because it is less than the value of the assets ($41,054,949.67) that JMG fraudulently transferred to the Ohadi / Woolley Defendants.

### B. The Collection of Damages Should Not Be Stayed During the Receivership

The Ohadi / Woolley Defendants contend that JM International should not be allowed to collect monetary damages against them until the Receiver has completed his work of liquidating JMG's assets. *See* Suggestions at 4-6. This argument is unpersuasive for three separate reasons.

First, the Ohadi / Woolley Defendants do not offer any data regarding what inventory, if any, JMG has preserved for the Receiver to liquidate, or what, if anything, the current orderly liquidation value of that inventory is. As set forth in the May 26 Order, the facts are as follows:

- In mid-2018, JMG was in Chapter 11 bankruptcy proceedings in Delaware. During its bankruptcy case, JMG concealed virtually all its inventory from the Bankruptcy Court and, by extension, from all arm's-length creditors who appeared in that case.

- In December 2018, after the bankruptcy case was dismissed, the Ohadi / Woolley

3

- Defendants tried to foreclose. In their foreclosure announcement, they released a list of the inventory they planned to auction. By carefully reviewing that list with the help of its expert witness, Mr. Tokoph, JM International learned that JMG had secretly given the Ohadi / Woolley Defendants a complete inventory list so that they could foreclose on the assets JMG had hidden from the Bankruptcy Court.
- That December 2018 foreclosure list is the most up-to-date list of JMG's inventory that was used at trial in this fraudulent transfer case. The only reason that list was available was that JMG had secretly given it to the Ohadi / Woolley Defendants, who then had to publish it when they tried to foreclose. In all other respects, both before and after December 2018, "JMG continued concealing highly relevant documents during fact discovery in this fraudulent transfer case, both before and after this Court entered an Order expressly requiring JMG to produce responsive documents." *See* May 26 Order, CL ¶ 320. In other words, regarding JMG's inventory, what was included within the evidentiary record at the trial in this case was a snapshot of JMG's inventory as of a specific point in time: December 2018.
- Accordingly, when Mr. Tokoph prepared his report and testified at trial, he offered an orderly liquidation analysis based on a hypothetical scenario of a liquidation of that inventory beginning in December 2018. "It would not be appropriate to apply those estimates to any earlier, or subsequent, points in time, because of changes in market conditions and the contents of the inventory over time." *See id.*, FF ¶ 418.
- Because this is a fraudulent transfer case, it cannot be assumed that, from December 2018 through the present – a period of over 18 months – JMG has preserved its inventory for the Receiver to liquidate. JMG repeatedly has demonstrated that it can and will fraudulently transfer assets in a matter of 24 hours when it suits JMG's

4

purposes to do so. The COVID-19 pandemic also has introduced great volatility into the market for aircraft, engines and components. For all of these reasons, if the Ohadi / Woolley Defendants wish to argue that the receivership can serve as an adequate substitute for the collection of damages or posting of a bond, it would necessarily be their burden to prove that JMG currently still has inventory for the Receiver to liquidate, and if so, how much, and what it is worth. However, the Ohadi / Woolley Defendants do not offer any such evidence in the instant Motion.

*See* May 26 Order FF ¶¶ 384-386, 388, 428-436, 441 and CL ¶¶ 9, 64, 123, 216, 320, 321.

Under these circumstances, collection of monetary damages cannot wait while the Receiver completes his work. If the collection of damages is stayed, the following series of events could easily unfold over the next several months: (i) the Receiver is appointed but, upon commencing his investigation, discovers that most or all of JMG's inventory is gone because JMG disposed of it in anticipation of the Receiver being appointed, or that its value has diminished, while (ii) in the meantime, the Ohadi / Woolley Defendants have manufactured liens over their personal assets, moved assets to shell companies and overseas accounts, or taken other such steps to shield assets from levy. Consequently, JM International would be forced to file yet another fraudulent transfer case. If iterative fraudulent transfer cases are needed to respond to scheme after scheme by the debtors, the purpose of fraudulent transfer litigation – to make the creditor whole – is defeated.

Second, entering a monetary damages award does not diminish the practical need for the receivership. The Receiver is not being appointed for the sole purpose of helping JM International collect the Term Loan Judgment. The broader purpose of the receivership is to aid the arm's-length creditors (including but not limited to JM International) who were defrauded when JMG concealed inventory from the Bankruptcy Court. Even if JM International were to collect the entire Term Loan Judgment from the Ohadi / Woolley Defendants, the receivership would still be

necessary to pay JMG's other arm's-length creditors. Last week, an arbitral tribunal handed down an award against JMG, and in favor of a JM International affiliate known as Top Jet Enterprises, Ltd., of approximately $87 million. *See* Docket No. 660. *See also* **Exhibit A** hereto. Just that one claim, by itself, could consume JMG's entire receivership estate and still be largely unsatisfied.

Third, since the outset of this case, the Ohadi / Woolley Defendants have well known that one of the principal forms of relief being sought was a damages award. There has never been any confusion about this point. Now that this case has been resolved against the Ohadi / Woolley Defendants, there is nothing unfair about awarding the relief that has been unequivocally sought since the first day of this litigation. In the words of the Ohadi / Woolley Defendants' own counsel:

- JM International "obtained a $6.5 million judgment on October 26, 2017 (the "Judgment") against [JMG] that remains unsatisfied and, through the operative Third Amended Complaint . . . seeks to have the Ohadi/Woolley Defendants be jointly and severally liable for the Judgment on a fraudulent transfer theory." *See* Docket No. 576 (Pre-Trial Brief of Ohadi/Woolley Defendants) at 1 (underlining in original).

- "[I]t's our position that this is a money damages dispute and we should not be foreclosed from foreclosure." *See* Jan. 31, 2019 Conf. Tr. (Docket No. 250) at 4:15-17.

- "[S]ince it's under the Missouri fraudulent transfer statute, a claim is recovered, or you recover a fraudulent transfer to the extent of the claim." *Id*. at 6:12-15.

- "International initiated this lawsuit on February 16, 2018, in an attempt to unwind a number of payments made to, among others, the Ohadi/Woolley Defendants (the "**Transfers**"). *See* Docket No. 569 (Pre-Trial Brief of JMG) at 4 (emphasis in original).

- "JM Intl. is only a judgment creditor seeking monetary damages from Appellants as transferees. . ." *See* March 12, 2019 Opening Brief submitted by Ohadi/Woolley

6

Defendants to the Eighth Circuit Court of Appeals (Case No. 19-1098) at 26.

The Ohadi / Woolley Defendants cannot credibly claim that they do not understand why monetary damages are being awarded. This point has been a central feature of this litigation from the very beginning. It can hardly come as a surprise that it is still part of this litigation at the end.

### C. The Judgment Does Not Need to Identify the Receiver by Name

In their Motion, the Ohadi / Woolley Defendants also argue that the judgment is defective because, although it makes clear that a Receiver will be appointed, it does not identify the Receiver by name. *See* Suggestions at 6. This critique of the judgment is unpersuasive because there is no need for the judgment to name the Receiver. A separate Receivership Order can name the Receiver and set the detailed terms and conditions for the Receiver's actual appointment. JM International therefore has submitted a Proposed Receivership Order. *See* Docket No. 661-1. The appointment of a Receiver is immediately appealable and it therefore is of no moment, for appellate purposes, whether the Receiver's appointment appears in a document entitled "Order" or a document entitled "Judgment." *See* 28 U.S.C. § 1292(a)(2). Either way, Defendants can proceed with their appeal.

### D. A Fee Award Does Not Need to Be Quantified for a Judgment to Be Final

The Ohadi / Woolley Defendants point out that, while this Court has decided that JM International should receive an award of its attorney fees and costs, this Court has not yet determined the exact amount of fees and costs to award. *See* Suggestions at 6. The Ohadi / Woolley Defendants try to use this point to cast doubt on whether the judgment can be or is meant to be final. *Id*. But no less authority than the U.S. Supreme Court has held that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." *Budinich v. Becton Dickinson & Co*., 486 U.S. 196, 202 (1988). *See also Maristuen v. Nat'l States Ins. Co*., 57 F.3d 673, 676 (8th Cir. 1995) (it is "erroneous" to suggest that a judgment is not final until the fee award); *Obin v. Int'l Ass'n of Machinists & Aerospace Workers*,

7

651 F.2d 574, 584 (8th Cir. 1981) ("A motion for an assessment of attorney's fees raises a collateral and independent claim for determination by the district court. Thus, a judgment on the merits of an action, otherwise final, is final for purposes of appeal notwithstanding that a claim for attorney's fees may remain to be decided."). Therefore, this criticism of the judgment should be rejected.

### E.     Well in Advance of the First Trial, the Parties Agreed that a Final Judgment Should Be Entered Without Delay after the First Trial

#### 1.     This Issue Was Resolved in January 2019 and There Is No Reason to Relitigate It Now

In the Suggestions, the Ohadi / Woolley Defendants state: "given the bifurcation order (Docket No. 275), it is ambiguous whether the Court intends to certify its judgment against the Ohadi/Woolley Defendants under Fed. R. Civ. P. 54(b). The Ohadi/Woolley Defendants, therefore, respectfully request that the Court issue an amended judgment clarifying whether it is a final judgment as to the Defendants." *See* Suggestions at 7. This argument has two basic flaws.

First, a Rule 54(b) certification does not need to appear within the four corners of a judgment. A Court's Rule 54(b) findings can be presented in an Order or in such other format as the Court may prefer. *See* Fed. R. Civ. P. 54(b); 10 Moore's Federal Practice – Civil § 54.24[1].

Second, in this case, the reason it was unnecessary to include Rule 54(b) findings in the judgment is that this issue was dealt with well in advance of the November 2019 trial against JMG and the Ohadi / Woolley Defendants. In January 2019 – ten months before that trial – the parties stipulated, in the form of their Joint Motion to Bifurcate Trial (Docket No. 212) (the "Bifurcation Motion") (**Exhibit B** hereto), that a complete, final and enforceable judgment should be entered immediately following the conclusion of that trial. The Bifurcation Motion is a written document that was signed by each party's counsel and filed on the case docket. The parties stipulated that:

- The first trial would include all claims against six defendants: (i) JMG; (ii) F. Paul Ohadi in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated

8

December 15, 1999 (the "Ohadi Trust"), and in his individual capacity; (iii) the Ohadi Trust; (iv) Kenneth M. Woolley; (v) KMW Business Jets, LLC, and (vi) Alta Airlines Holdings, LLC.  *See* Bifurcation Motion ¶ 1;

- Bifurcation "will not in any way restrict the scope of the claims to be tried" against JMG and the Ohadi / Woolley Defendants.  *Id*. ¶ 6;

- No party will argue that the Krauses or Jet Midwest, Inc. ("JM Inc.") – the parties who were excluded from the first trial – were necessary parties for purposes of the trial of claims against JMG or the Ohadi / Woolley Defendants, "or that bifurcation otherwise delays or prevents a complete and final resolution of such claims in the April 15 Trial."[2] *Id*. ¶ 7; and,

- "No Defendant will argue that bifurcation delays or prevents the entry or enforcement of a final judgment with respect to any claim against JMG, Mr. Ohadi, the Ohadi Trust, Mr. Woolley, KMW or Alta upon the conclusion of the April 15 Trial."  *Id*. ¶ 8.

At a telephonic conference conducted in this case on January 31, 2019, there was a further discussion regarding the reasons for the bifurcation of claims and parties in this case.  During that conference, the following statements were made by counsel for the Ohadi/Woolley Defendants:

- "The bifurcation was a result of an effort to try to simplify the issues for your Honor.  There are a lot of issues that don't have anything – and claims that don't have anything to do with whether or not Mr. Ohadi and Mr. Woolley's affiliates have an enforceable security interest."  *See* Jan. 31, 2019 Conf. Tr. (Docket No. 250) at 3:12-16.

- "The claims that were bifurcated out are primarily against – none of those are against Mr. Ohadi or Mr. Woolley.  Those are all against the Krauses on separate issues, so

---

[2] When the Bifurcation Motion was filed, the first trial was scheduled for April 15, 2019.  The first trial later was postponed to November 2019.  The structure and scope of the first trial were not changed.

9

they were fairly easy to bifurcate. That's one of the things we all agreed on, that those claims would not relate to whether or not we had an enforceable security interest." *Id*. at 5:15-21.

On February 8, 2019, this Court entered an Order (Docket No. 275) (the "February 8, 2019 Bifurcation Order") granting the above-referenced Bifurcation Motion. *See* **Exhibit C** hereto. The Order concluded: "Accordingly, the Court hereby **GRANTS** the parties' Joint Motion to Bifurcate the Trial (Doc. # 212)." *See* February 8, 2019 Bifurcation Order at 2 (emphasis in original).

On March 6, 2019, this Court entered an additional Order (Docket No. 337) (the "March 6, 2019 Bifurcation Order") reaffirming its February 8, 2019 Bifurcation Order. *See* **Exhibit D** hereto (together with Docket No. 275, the "Bifurcation Orders"). The March 6, 2019 Bifurcation Order concluded: "Accordingly, the Court **ORDERS** that the claims in this case shall remain bifurcated as stated in the January 29, 2019 Order." *See* March 6, 2019 Bifurcation Order at 2 (emphasis in original). The reference in the March 6, 2019 Bifurcation Order to a "January 29, 2019 Order" was clearly a reference to the Bifurcation Motion, which was filed on January 29, 2019 and was effectively made into an Order when approved by the Court on February 8, 2019.

Shortly before the November 2019 trial, Defendants attempted to violate the Bifurcation Motion by arguing, in a motion in limine, that JM International should not be allowed to present evidence about transfers to the Krauses or JM Inc. at the trial against JMG and the Ohadi / Woolley Defendants. This Court denied that motion in limine. *See* November 14, 2019 Order (Docket No. 600) (the "November 14, 2019 Order") (**Exhibit E** hereto) at 2. This Court held: "The Court finds that the bifurcated defendants agreed to the above referenced terms when the parties moved to bifurcate this case. Having agreed that there would be no restriction on the scope of evidence that may be presented, the Bifurcated defendants may not now move to restrict such evidence." *Id*.

Turning back to the Motion at issue here, it is unclear why the Ohadi / Woolley Defendants

10

believe a further statement from this Court is needed to the effect that the Rule 54(b) requirements were met.  This issue was dealt with multiple times last year, as shown above, when the parties agreed that a final, enforceable judgment should be entered following the first trial, and this Court approved that agreement in three Orders.  Certainly, JM International would not object to this Court once again confirming that the Rule 54(b) requirements are met and that it thus is appropriate to issue a final, enforceable judgment.  But if the Ohadi / Woolley Defendants are seeking to delay such a judgment by suggesting that it is necessary to litigate a Rule 54(b) issue at this time, their position should be rejected as just another attempt to improperly escape the parties' agreement.

### 2. Even if This Issue Had Not Been Addressed Well Before the First Trial, It Would Still be Appropriate to Enter a Rule 54(b) Certification

As discussed above, it is not necessary to issue a further Rule 54(b) certification because the parties executed and filed a written agreement over 18 months ago to the effect that a final, enforceable judgment should be entered after the first trial in this case, and this Court approved that agreement in three separate Orders.  But there is also no reason why this Court cannot issue a Rule 54(b) certification now as well.  Under Rule 54(b), a Court may issue a final judgment with respect to a sub-set of claims or a sub-set of parties when there is "no just reason for delay."  *See* Fed. R. Civ. P. 54(b).  Here, in the words of Rule 54(b), there is "no just reason for delay."  *Id*.

First, all of the claims against JMG and the Ohadi / Woolley Defendants have now been resolved.  As the parties repeatedly recognized in advance of the first trial (*see* § II(E)(1), *supra*), the claims against JMG and the Ohadi / Woolley Defendants (which were addressed in the first trial) are distinct from the claims against the Krauses and JM Inc. (which are to be addressed in the second trial).  Regarding the claims against JMG and the Ohadi / Woolley Defendants, there is nothing left to do other than (i) quantifying the award of attorney fees and costs and (ii) ensuring that the judgment fully reflects all the remedies granted in the May 26 Order.  As nothing else

11

remains to be done, there is no reason to delay entering a final and enforceable judgment against JMG and the Ohadi / Woolley Defendants. There is no possibility of the second trial (against the Krauses and JM Inc.) disturbing the results of the first trial, as the trials involve different parties.

This is not a case in which a court sub-divides a claim against a particular party into phases, where, for example, the first trial resolves only liability questions and the second trial resolves the computation of damages. In such cases, there might be practical reasons not to enter judgment or allow the prosecution of an appeal after the first trial. But that is not what happened here. In this case, the first trial encompassed all of the claims and requests for relief against JMG and the Ohadi / Woolley Defendants. Therefore, a final and enforceable judgment should be entered at this time.

Second, this is a fraudulent transfer case. This case was brought because JMG not only has refused to pay the Term Loan Judgment (entered nearly three years ago, on October 26, 2017), but has fraudulently transferred and concealed assets to make the Term Loan Judgment uncollectible. As found in the May 26 Order, Defendants' conduct includes, but is not limited to:

- Secretly paying themselves millions of dollars from the proceeds of JM International's loan collateral. *See* May 26 Order, FF ¶¶ 148-250.

- Following entry of the Term Loan Judgment, secretly colluding with JMG on a plan to "scrap" the company. *Id.* ¶¶ 251-257

- Instructing JMG to move its AWN share certificates from Los Angeles to Utah before they could be seized by the U.S. Marshals Service, and while a TRO to freeze the same share certificates was pending before this Court. *Id.* ¶¶ 258-285.

- Manufacturing a new "lien" over JMG's assets 24 hours after JM International had served a garnishment writ. *Id.* ¶¶ 286-320.

- Pretending that the Ohadi Trust had a senior, blanket lien over all of JMG's assets, while in fact, with Mr. Ohadi's approval, Mr. Woolley was secretly siphoning tens of

millions of dollars of JMG's assets to himself. *Id.* ¶¶ 321-375.

- Hiding virtually all of JMG's inventory from a federal bankruptcy court, and then attempting to stake their own foreclosure of the inventory. *Id.* ¶¶ 376-441.

Now, another case – this fraudulent transfer case – has been resolved against Defendants. If a final, enforceable judgment is not entered at this time, there can be little doubt that Defendants will seize upon that opportunity to once again fraudulently transfer assets, this time to frustrate the judgment entered here. JM International should not be in an endless loop of litigating additional fraudulent transfer cases, always needing to bring another new case to claw back the assets that Defendants fraudulently transferred after the last case was resolved against them. This matter should be brought to a final resolution now. To do so, the Court should enter a judgment specifying all of the relief awarded, including monetary damages and the appointment of a receiver. The Receiver can then begin his work. With respect to the damages award, the Ohadi / Woolley Defendants must post a bond pending appeal or JM International must begin collection efforts.

### F.     **Defendants' Critiques of the May 26 Order Can Be Resolved on Appeal**

The Ohadi / Woolley Defendants devote the remainder of their legal brief to expressing disagreement with the May 26 Order. *See* Suggestions at 7-8. The Ohadi / Woolley Defendants surely will use their appeal to test these arguments. That forthcoming appeal will be the third time that JMG and the Ohadi / Woolley Defendants have sought relief from the 8th Circuit as part of their seemingly endless campaign to delay and obstruct the collection of the Term Loan Judgment.

As this Court will recall, in 8th Circuit Case No. 18-1311, JMG asked the 8th Circuit to overturn the Term Loan Judgment on the ground that, according to JMG, this Court lacked diversity jurisdiction to enter the Term Loan Judgment. This argument was never raised by JMG during the Term Loan Action itself. Rather, it was invented by JMG only during this fraudulent transfer case. In legal briefs filed in this fraudulent transfer case and before the 8th Circuit, JMG

13

insisted that the Term Loan Judgment was entered without a proper basis in diversity jurisdiction. This argument never had a reasonably defensible basis and was rejected by the 8th Circuit in four paragraphs of its August 2, 2019 Opinion. In addition, the 8th Circuit ordered JMG to pay JM International's fees and costs from the Term Loan Action, and also to pay the costs of the appeal.

But that was not the end of Defendants' efforts to delay this case, and escalate the costs of this case, by bringing appeals before the 8th Circuit. On January 15, 2019, the Ohadi / Woolley Defendants commenced 8th Circuit Case No. 19-1098, in which the Ohadi / Woolley Defendants contended that the temporary restraining order and preliminary injunction entered against them by this Court on January 4, 2019 was both procedurally and substantively improper. Procedurally, the Ohadi / Woolley Defendants complained that this Court somehow had been unfair to them during the preliminary injunction hearing held on January 3, 2019, even though they had raised no such objections during the January 3, 2019 hearing itself. Substantively, the Ohadi / Woolley Defendants argued that there was no basis for the injunction. In an Opinion issued on March 25, 2020, the 8th Circuit rejected both of those arguments and affirmed the preliminary injunction.

The Ohadi / Woolley Defendants certainly are entitled to go before the 8th Circuit again, this time to challenge this Court's ultimate resolution of the merits of JM International's claims against them. However, there is no reason to believe that this forthcoming appeal has any greater likelihood of success than the last two appeals, both of which were rejected. What is important is that the collectability of this Court's judgment is not impaired during appeal, particularly given that this is a fraudulent transfer case in which this Court already has found dozens upon dozens of prior fraudulent transfers. As discussed, the receivership cannot ensure collectability because the Ohadi / Woolley Defendants do not disclose what inventory, if any, JMG still has for the Receiver, or what its value is. The snapshot of JMG's inventory at trial was from December 2018 – over 18 months ago. This Court has found that "JMG continued concealing highly relevant documents

14

during fact discovery in this fraudulent transfer case, both before and after this Court entered an Order expressly requiring JMG to produce responsive documents." *See* May 26 Order, CL ¶ 320.

This Court should enter a final and enforceable judgment specifying not only that a Receiver is to be appointed, but also the award of monetary damages, and should require a bond up to the full amount of that damages award, anticipated awards of fees and costs, and post-judgment interest through the likely one-year appellate cycle. If the Ohadi / Woolley Defendants post that bond, it will remain in place while the Receiver takes stock of and liquidates JMG's inventory. If JMG has preserved its inventory for the Receiver and cooperates with the Receiver during the life of the receivership, hopefully the Receiver will be successful in generating sufficient net proceeds to pay the Term Loan Judgment and related fees and costs. If so, the bond will be returned and this case will be at an end. However, a full bond is necessary in case the Receiver discovers that much or all of JMG's inventory is gone, or that its value has diminished, or that or JMG is uncooperative – scenarios that, given the circumstances of this case, are all too likely.

### III.  CONCLUSION

For the reasons set forth herein, JM International respectfully requests that this Court: (i) amend the judgment to specify the amount of monetary damages awarded; (ii) either find that a Rule 54(b) certification was already entered 18 months ago in the form of this Court's Orders granting the Bifurcation Motion, or grant such a certification now, and (iii) deny the Motion in all other respects while granting such other and further relief as the Court may deem just and proper.

Date: July 7, 2020                    Respectfully submitted,

By: /s/ Eric Epstein_____
Eric Epstein
Geoffrey Sant
Ari Berman
Michelle Ng
Carol Lee
Daryl L. Kleiman
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1000
Email: geoffrey.sant@pillsburylaw.com
Email: ari.berman@pillsburylaw.com
Email: eric.epstein@pillsburylaw.com
Email: michelle.ng@pillsburylaw.com
Email: carol.lee@pillsburylaw.com
Email: daryl.kleiman@pillsburylaw.com

- *and* –

Kirk T. May, Mo. Bar # 31657
Carrie Phillips, Mo. Bar #69278
GM Law PC
1201 Walnut Street, Suite 2000
Kansas City, MO 64106
Tel.: 816-471-7700
Email: kirkm@gmlawpc.com
Email: carriep@gmlawpc.com

*Attorneys for Plaintiff/Judgment-Creditor Jet Midwest International Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, I electronically filed the foregoing document the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for this case.

                                                 Michelle Ng
                                       *Attorney for Jet Midwest International Co. Ltd.*